DARREN S. ENENSTEIN (SBN 195894)
Email: dse@enensteinlaw.com
ROBERT A. RABBAT (SBN 254602)
Email: rrabbat@enensteinlaw.com
CHRIS S. PACETTI (SBN 231968)
Email: cpacetti@enensteinlaw.com
**ENENSTEIN PHAM & GLASS**
12121 Wilshire Boulevard, Suite 600
Los Angeles, California 90025
Phone: (310) 899-2070
Fax: (310) 496-1930
*Attorneys for Plaintiffs*
*Vaghashia Family Limited Partnership*
*and Sherman Oaks First Plaza, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| VAGHASHIA FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership; SHERMAN OAKS FIRST PLAZA, LLC, a California limited liability company, | Case No. 19-1876 |
| | **COMPLAINT FOR:** |
| Plaintiffs, | **1. RICO (MAIL AND WIRE FRAUD) 18 U.S.C. §§ 1341, 1343** |
| vs. | **2. CONSPIRACY TO COMMIT RICO (MAIL AND WIRE FRAUD)** |
| PRASHANT VAGHASHIA, an individual; MITA VAGHASHIA, an individual; RAKESH KOTHARI, an individual; NIDHI VAGHASHIA, an individual; GARY V. SMITH, an individual; DHANAJAY RAWAL, an individual; PINAL DOSHI, an individual; VAGHASHIA FAMILY MANAGEMENT INC., an Idaho corporation; VAGHASHIA FAMILY MANAGEMENT, INC., a California corporation; CENTURY HOSPITALITY INC. dba | **3. RICO (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY) 18 U.S.C. §§ 2314, 2315** |
| | **4. CONSPIRACY TO COMMIT RICO (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY)** |
| | **5. RICO (LAUNDERING OF MONETARY INSTRUMENTS) 18 U.S.C. § 1956** |
| | **6. CONSPIRACY TO COMMIT RICO (LAUNDERING OF** |

1

COMPLAINT

ECONOLODGE INN & SUITES, an Arkansas corporation; HOT SPRINGS RESTAURANT AND LOUNGE, INC. dba TASTE OF INDIA, an Arkansas corporation; EMPIRE HOSPITALITY INC. dba RODEWAY INN, an Arkansas corporation; CASTLE RANCH STEAKHOUSE LLC, an Idaho corporation; PIONEER HOTEL GROUP INC., an Idaho corporation; DOES 1-20, inclusive; and ABC ENTITIES 1-20, inclusive,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MONETARY INSTRUMENTS)
7. **RICO (ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY) 18 U.S.C. § 1957**
8. **CONSPIRACY TO COMMIT RICO (ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY)**
9. **FRAUDULENT MISREPRESENTATION**
10. **CONCEALMENT**
11. **BREACH OF CONTRACT**
12. **FALSE PROMISE**
13. **COMMON COUNT**
14. **CONVERSION**

**JURY TRIAL DEMANDED**

COMPLAINT

For their Complaint, Plaintiffs Vaghashia Family Limited Partnership and Sherman Oaks First Plaza, LLC ("Plaintiffs"), allege as follows:

**INTRODUCTION AND NATURE OF THE ACTION**

1.      Plaintiffs bring this civil action under 18 U.S.C. § 1961, *et seq.* ("Racketeer Influenced and Corrupt Organization Act" or "RICO Act") to secure relief, restitution, disgorgement of ill-gotten gains, and for actual, consequential, and exemplary damages, other equitable relief, and all other relief which this honorable Court deems just and proper for the unlawful fraudulent acts, omissions, and practices by Defendants, and each of them, alleged herein.

2.      Defendants (i) Prashant Vaghashia, (ii) Mita Vaghashia, (iii) Rakesh Kothari, (iv) Nidhi Vaghashia, (v) Dhanajay Rawal, (vi) Pinal Doshi, (vii) Gary V. Smith, (viii) Vaghashia Family Management Inc. (an Idaho corporation), (ix) Vaghashia Family Management, Inc. (a California corporation), (x) Century Hospitality Inc. dba Econolodge Inn & Suites, (xi) Hot Springs Restaurant and Lounge, Inc. dba Taste of India, (xii) Empire Hospitality Inc. dba Rodeway Inn, (xiii) Castle Ranch Steakhouse LLC, and (xiv) Pioneer Hotel Group Inc. have systematically and continuously, over approximately the last four (4) years, conducted a corrupt enterprise of fraud, misrepresentation, embezzlement and other unlawful acts in violation of the RICO Act.  Defendants Prashant Vaghashia, Mita Vaghashia, and Rakesh Kothari are former employees of Plaintiffs. Plaintiffs own and operate several hotels, businesses, and rental properties, primarily in the Los Angeles area.  While employed by Plaintiffs, Defendants defrauded Plaintiffs of $808,626.10 from the hotels and/or businesses, and, along and in concert with the remaining Defendants, transferred their ill-gotten gains across state lines to purchase and operate investment properties and businesses in Idaho and Arkansas, and perhaps other locations, subject to further investigation, using business entities established for this purpose.

/ / /

COMPLAINT

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Jurisdiction is also proper pursuant to 18 U.S.C. § 1965, which allows for nationwide jurisdiction pursuant to RICO, 18 U.S.C. §§ 1961-1968.

4.     This Court has supplemental subject matter jurisdiction over the pendant state claims herein pursuant to 28 U.S.C. § 1367 and the Federal Rules of Civil Procedure Rule 13(a) because the allegations regarding such claims arise out of the same transaction or occurrence and share a common nucleus of operative facts as the remaining claims herein.

5.     This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. § 1965(a) and otherwise, as further discussed below, because each of the Defendants has had regular, continuous, and ongoing contacts with this jurisdiction through their actions on behalf of, and business relationships with, the other Defendants.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the action occurred in this district (28 U.S.C. § 1391(b)(2)), including without limitation, the fraud and embezzlement of the funds addressed in this action and the management and operation of the entity defendants (identified below) by residents of Los Angeles County, California.

## PARTIES

7.     Plaintiff Vaghashia Family Limited Partnership ("VFLP") is a limited partnership organized under the laws of the State of Nevada, with its principal place of business at 1702 A Street, Suite C. Sparks, NV 89431.  At all relevant times, VFLP was owned and controlled by Govind R. Vaghashia and Vaghashia Living Trust.

8.     Plaintiff Sherman Oaks First Plaza, LLC ("Sherman Oaks First Plaza") is a limited liability company organized under the laws of the State of

California, with its principal place of business at 535 Brand Blvd., Suite 1050, Glendale, California 91203.  At all relevant times, Sherman Oaks First Plaza was owned and controlled by Govind R. Vaghashia and Sonal Vaghashia.

9.     Defendant Prashant Vaghashia ("Prashant[1]") is an individual who, on information and belief, resides in Burbank, California, and at all times relevant hereto was and is a resident of Los Angeles County, California, and thereby subject to jurisdiction in this Court pursuant to 18 U.S.C. § 1965(a) and otherwise.

10.    Defendant Mita Vaghashia ("Mita") is an individual who, on information and belief, resides in Burbank, California, and at all times relevant hereto was and is a resident of Los Angeles County, California, and thereby subject to jurisdiction in this Court pursuant to 18 U.S.C. § 1965(a) and otherwise.

11.    Defendant Rakesh Kothari ("Kothari") is an individual who, on information and belief, lives in Burbank, California, and at all times relevant hereto was and is a resident of Los Angeles County, California, and thereby subject to jurisdiction in this Court pursuant to 18 U.S.C. § 1965(a) and otherwise.

12.    Defendant Nidhi Vaghashia ("Nidhi") is an individual who, on information and belief, resides in New York, New York.

13.    Upon information and belief, Defendant Nidhi has had regular, continuous, and ongoing contacts with this jurisdiction through her actions on behalf of, and business relationships with, the other Defendants.  Nidhi is the daughter of Defendants Prashant and Mita and a member/officer of many of the entity defendants described further below.  Therefore, the ends of justice require that Nidhi be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§ 1965(a) and (b) and otherwise.

14.    Defendant Gary V. Smith ("Smith") is an individual who, on information and belief, resides in Hot Springs, Arkansas.

---

[1] For the sake of clarity, all Defendants with the surname "Vaghashia" are identified herein by their first name.

COMPLAINT

15.     Upon information and belief, Defendant Smith has had regular, continuous, and ongoing contacts with this jurisdiction through his actions on behalf of, and business relationships with, the other Defendants and was/is a member/officer of many of the entity defendants described further below. Therefore, the ends of justice require that Smith be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§1965(a) and (b) and otherwise.

16.     Defendant Dhananjay Rawal ("Rawal") is an individual who, on information and belief, resides in Yorba Linda, California, and at all times relevant hereto was and is a resident of Orange County, California, and thereby subject to jurisdiction in this Court pursuant to 18 U.S.C. § 1965(a) and otherwise.

17.     Defendant Pinal Doshi ("Doshi") is an individual who, on information and belief, resides in Cerritos, California, and at all times relevant hereto was and is a resident of Los Angeles County, California, and thereby subject to jurisdiction in this Court pursuant to 18 U.S.C. § 1965(a) and otherwise.

18.     Defendants Prashant, Mita, Kothari, Nidhi, Smith, Rawal, and Doshi are collectively referred to herein at the "Individual Defendants".

19.     Defendant Century Hospitality Inc. dba Econolodge Inn & Suites ("Century Hospitality") is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 1204 Central Avenue, Hot Springs, Arkansas 71901.  Upon information and belief, Defendant Century Hospitality was formed in or about August 2015 by Defendants Nidhi, Mita, and a deceased individual named Prashant Patel.  Defendants Nidhi, Mita, and Smith are managing members/officers of Century Hospitality.

20.     Upon information and belief, Defendant Century Hospitality has had regular, continuous, and ongoing contacts with this jurisdiction through its actions on behalf of, and business relationships with, the other Defendants, including without limitation its member/officer Mita, who is, and at all times relevant hereto

COMPLAINT

was, a resident of Los Angeles County, California. Therefore, the ends of justice require that Century Hospitality be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§1965(a) and (b) and otherwise.

21.    Defendant Hot Springs Restaurant and Lounge, Inc. dba Taste of India ("Hot Springs Restaurant") is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 1204 Central Avenue, Hot Springs, Arkansas 71901. Upon information and belief, Defendant Hot Springs Restaurant was formed in or about November 2015 by Defendants Nidhi, Mita, and Smith, who are managing members/officers of Hot Springs Restaurant.

22.    Upon information and belief, Defendant Hot Springs Restaurant has had regular, continuous, and ongoing contacts with this jurisdiction through its actions on behalf of, and business relationships with, the other Defendants, including without limitation its member/officer Mita, who is, and at all times relevant hereto was, a resident of Los Angeles County, California. Therefore, the ends of justice require that Century Hospitality be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§ 1965(a) and (b) and otherwise.

23.    Defendant Castle Ranch Steakhouse LLC ("Castle Ranch Steakhouse") is a limited liability company organized under the laws of the State of Idaho, with its principal place of business at 3300 S. Vista Avenue, Boise, Idaho 83705. Upon information and belief, Defendant Castle Ranch Steakhouse was formed in or about July 2017 by Defendants Nidhi and Rawal, who are managing members/officers of Castle Ranch Steakhouse.

24.    Upon information and belief, Defendant Castle Ranch Steakhouse has had regular, continuous, and ongoing contacts with this jurisdiction through its actions on behalf of, and business relationships with, the other Defendants, including without limitation Nidhi's parents, Prashant and Mita, who are, and at all times relevant hereto were, residents of Los Angeles County, California.

COMPLAINT

Therefore, the ends of justice require that Castle Ranch Steakhouse be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§ 1965(a) and (b) and otherwise.

25.   Defendant Vaghashia Family Management Inc. is a corporation organized under the laws of the State of Idaho, with its principal place of business at 3339 Durham Court, Burbank, California 91504.  Upon information and belief, Vaghashia Family Management Inc. was formed by Defendants Prashant and Mita in January 2018, who are managing members/officers of Vaghashia Family Management Inc.  Therefore, the ends of justice require that Vaghashia Family Management Inc. be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§ 1965(a) and (b) and otherwise.

26.   Defendant Vaghashia Family Management, Inc. (California corporation) is a corporation organized under the laws of the State of California, with its principal place of business at 3339 Durham Court, Burbank, California 91504, and thereby subject to jurisdiction in this Court pursuant to 18 U.S.C. § 1965(a) and otherwise.  Upon information and belief, Vaghashia Family Management, Inc. was formed by Defendant Prashant in February 2018, who is a managing member/officer of Vaghashia Family Management, Inc.[2]

27.   Defendant Empire Hospitality Inc. dba Rodeway Inn ("Empire Hospitality") is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 1204 Central Avenue, Hot Springs, Arkansas 71901.  Upon information and belief, Defendant Empire Hospitality was formed in or about July 2018 by Defendant Mita, who is a managing member/officer of Empire Hospitality.

/ / /

[2] Hereinafter Vaghashia Family Management, Inc., a California corporation, and Vaghashia Family Management Inc., an Idaho corporation, are collectively referred to as "VFMI."

8

COMPLAINT

28.     Upon information and belief, Defendant Empire Hospitality has had regular, continuous, and ongoing contacts with this jurisdiction through its actions on behalf of, and business relationships with, the other Defendants, including without limitation its managing member Defendant Mita, who is, and at all times relevant hereto was, a resident of Los Angeles County, California.  Therefore, the ends of justice require that Century Hospitality be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§ 1965(a) and (b) and otherwise.

29.     Defendant Pioneer Hotel Group Inc. ("Pioneer Hotel Group") is a corporation organized under the laws of the State of Idaho, with its principal place of business at 3300 S. Vista Ave., Boise, Idaho 83705.  Upon information and belief, Defendant Pioneer Hotel Group was formed in or about May 2018 by Defendants Mita and Doshi, who are managing members/officers of Pioneer Hotel Group.

30.     Upon information and belief, Defendant Pioneer Hotel Group has had regular, continuous, and ongoing contacts with this jurisdiction through its actions on behalf of, and business relationships with, the other Defendants, including without limitation its managing member/officer Defendant Mita, who is, and at all times relevant hereto was, a resident of Los Angeles County, California. Therefore, the ends of justice require that Pioneer Hotel Group be subject to jurisdiction in this District and brought before this Court pursuant to 18 U.S.C. §§ 1965(a) and (b) and otherwise.

31.     Defendants VFMI, Century Hospitality, Hot Springs Restaurant, Empire Hospitality, Castle Ranch Steakhouse, and Pioneer Hotel Group are collectively referred to herein as the "Entity Defendants", and together with the Individual Defendants, the "Consortium" or "Defendants".

32.     The defendants named herein as DOES 1-20 and ABC entities 1-20 are unknown to Plaintiffs, and therefore Plaintiffs sue those defendants by such

9

COMPLAINT

fictitious names.  Plaintiffs are informed and believe, and thereon allege, that such fictitiously named defendants are in some manner, means or degree responsible for the events and happenings herein alleged, or were the agents, servants, employees and/or co-conspirators of the other named defendants and were at all times herein mentioned acting within the course and scope of their agency, employment and/or conspiratorial purpose and with the knowledge, consent and ratification of their principal(s) and/or employers.  Plaintiffs will amend this complaint to assert the true names and capacities of the fictitiously designated defendants when the same have been ascertained.

33.    Plaintiffs are informed and believe, and thereon allege, that each defendant, whether expressly or fictitiously named, was at all times herein mentioned the agent, employee, partner, joint venturer, co-conspirator, representative or alter ego of each remaining defendant, and that each defendant, at all times herein mentioned, committed such acts or omissions within the course and scope of such agency, servitude, employment, partnership, joint venture, conspiracy, representation or alter ego relationship with the full knowledge, consent, authority, and ratification of each remaining defendant.

## GENERAL ALLEGATIONS

## A.    OVERVIEW OF THE CONSORTIUM'S FRAUDULENT SCHEME

34.    Defendants Prashant, Mita, and Kothari defrauded Plaintiffs and embezzled substantial monies from Plaintiffs and, with the aid of Defendants Nidhi, Smith, Rawal, and Doshi, secreted and transported such monies across state lines to purchase, invest in, and operate businesses and properties in Idaho and Arkansas.

35.    Plaintiff VFLP owns and operates several hotels and properties, primarily in the Los Angeles area, including Quality Inn Burbank Airport, Quality Inn and Suites Camarillo, and Travelodge Burbank.

/ / /

36.     Plaintiff Sherman Oaks First Plaza owns Sherman Oaks Shopping Center located in Sherman Oaks, California.

37.     Defendants Prashant, Mita, and Kothari are former employees of VFLP and, by and through their employment as managers, had direct or indirect access to the bank accounts for Quality Inn Burbank Airport, Quality Inn and Suites Camarillo, Travelodge Burbank, and Sherman Oaks Shopping Center. Prashant was a signatory on Travelodge Burbank and Sherman Oaks First Plaza's bank accounts, and Prashant and Mita were signatories on Quality Inn Burbank Airport and Quality Inn and Suites Camarillo's bank accounts.

38.     Defendant Prashant originally arrived in the U.S. using a fabricated passport in 1984.  In 1985, he was hired to help operate Travelodge El Monte. Shortly thereafter, his wife, Defendant Mita, was also hired to help operate the hotel as resident property managers.

39.     Defendants Prashant and Mita subsequently worked for other hotels owned by VFLP, including Quality Inn Burbank Airport and Quality Inn and Suites Camarillo, among other hotels owned and controlled by VFLP.  Prashant and Mita's responsibilities included managing the day-to-day operations, including receipt of cash and other proceeds paid by patrons of the hotels, payroll, bank deposits, cash management, handling needed repairs to the hotel premises, overseeing employee hires, and other managerial-type duties.  In exchange for their work, Defendants Prashant and Mita received monthly compensation and reimbursement for reasonable living expenses, the total of which was not to exceed a combined $5,000 per month for both of them.

40.     Because Prashant and Mita were tasked with the responsibility of managing and forwarding cash and credit card proceeds paid by hotel patrons, payroll, and purchasing supplies for Quality Inn Burbank Airport and Quality Inn and Suites Camarillo, they were granted check signing authority for these businesses.  Additionally, Prashant was granted check signing authority for

11

Travelodge Burbank and Sherman Oaks First Plaza in order to support VFLP and Sherman Oaks First Plaza when their principal was, from time to time, unavailable to sign checks that were previously approved for payment.

41.    At all times relevant hereto, Prashant and Mita represented to VFLP that they would manage the hotel operations in good faith and remit all of the proceeds of such operations to VFLP, less monthly compensation and reimbursement for reasonable living expenses, the total of which was not to exceed a combined $5,000 per month for the both of them.  At all relevant times, Prashant and Mita provided VFLP with a false sense of security and trust by remitting partial cash amounts from hotel operations, while embezzling the remaining amounts, as discussed in detail below.  Nonetheless, at various times Plaintiffs attempted to reconcile the cash receipts remitted to them by Prashant and Mita versus the total cash receipts of Plaintiffs' operations and noticed significant discrepancies.  At each instance that Plaintiffs confronted Defendants Prashant and Mita about the cash discrepancies, Defendant Prashant assured Plaintiffs that Prashant and Mita would correct any discrepancies immediately and pay Plaintiffs an amount equal to the missing cash as soon as possible.

42.    In or about July 2014, Prashant and Mita hired Defendant Kothari to purportedly help with marketing for Quality Inn Burbank Airport.  Prashant and Mita eventually allowed Defendant Kothari's duties to expand to cover many of the responsibilities that were assigned to Prashant and Mita, including management of the hotel operations, employee recruiting and disciplinary action, calculating and recording receipt of cash and credit card transactions, management of direct billing accounts, calculating and recording bank deposits, and other managerial-type duties.

43.    Upon information and belief, unbeknownst to Plaintiffs, Defendants Prashant, Mita, and Kothari secretly concocted, agreed to conduct, and committed acts in furtherance of a civil conspiracy to defraud Plaintiffs by siphoning off and

COMPLAINT

embezzling funds rightfully belonging to Plaintiffs, removing such funds from California, and using those funds to invest in other real estate assets and businesses in Idaho and Arkansas that were not owned or controlled by Plaintiffs in order to secret those funds and make them unreachable to Plaintiffs (the "Conspiracy").

44.    Furthermore, upon information and belief, Defendants Prashant, Mita, and Kothari enrolled the remaining defendants to participate in the Conspiracy in order to launder the stolen funds, and engage in financial transactions with the stolen funds, for the purpose of concealing Defendants Prashant, Mita, and Kothari as the source of the funds and their control of the funds used to engage in such financial transactions.

**B.    VFLP BUSINESSES APPEAR TROUBLED, EXPOSING THE FRAUDULENT SCHEME**

45.    In or about 2016, the hotels that Defendants Prashant, Mita, and Kothari helped manage began to experience substantial increases in operational problems and underperform economically.  This was as a result of mismanagement of personnel, poor customer service, lack of maintaining the overall building and guest room condition and very likely due to the siphoning of funds needed to maintain, improve and update the Quality Inn Burbank Airport and Quality Inn and Suites Camarillo by Defendants Prashant, Mita, and Kothari.  These operational issues included, but were not limited to: multiple consecutive failures of franchise mandated quality assurance inspections conducted every six months by the franchise Quality Assurance inspector to ensure all standards for cleanliness, safety, and condition are maintained; significant drops in guest satisfaction, loyalty scores and online travel website rankings such as TripAdvisor; increases in guest complaints via brand website and other reputable online booking sites such as TripAdvisor, Expedia and Priceline; receipt of multiple franchise default notices and assessments of late fees resulting from untimely payments of franchise fees;

COMPLAINT

and default notices from vendors/creditors such as Expedia, Travelocity, Booking.com, HD Supply, Guest Supply, Sysco Ventura and other vendors.

46.    Based thereon, VFLP was notified by one of its franchisors, Choice Hotels International ("Choice Hotels"), in 2016 that the hotels managed by Defendants Prashant, Mita, and Kothari were severely underperforming, and had failed consecutive quality assurance inspections.  VFLP cautioned Defendants Prashant, Mita, and Kothari that based on the notification provided by Choice Hotels, VFLP would be making significant changes to management if the hotels did not significantly improve before the end of that calendar year.

47.    Despite VFLP providing substantial upgrades and allocation of resources to the hotels, and hiring individuals recommended by Defendants Prashant, Mita, and Kothari to improve the management of the hotels, the economic and qualitative issues continued to worsen throughout 2016.

48.    In August 2017, VFLP informed Defendants Prashant, Mita, and Kothari that it was actively pursuing a management change for Quality Inn Burbank Airport and Quality Inn and Suites Camarillo, effective January 1, 2018. The goal was to significantly improve the overall condition of the hotel premises, guest rooms and buildings, guest service scores, and overall online and local reputation of the properties within the surrounding neighborhood, but most importantly to provide better accountability of revenue, policies for cash control, annual budgets, and key performance indicators to benchmark the progress over time.  At this time Plaintiffs demanded repayment of the missing cash receipts that Defendants Prashant and Mita promised to repay to Plaintiffs over the course of their involvement with Plaintiffs' operations.  Rather than repay such funds, for the first time, Defendant Prashant asserted that he was not required to repay those amounts, but instead was entitled to keep those cash receipts as his own property.

49.    Next, in March of 2018, VFLP took over management of Quality Inn Burbank Airport and Quality Inn and Suites Camarillo (by and through a third-

party management company appointed by VFLP). Since then, VFLP has had direct control over and access to the cash receipts of such hotel properties and confirmed the substantial discrepancies discussed above, which amounted to approximately $365,934.41 between 2015 and the present.

50.    VFLP further discovered credit card charges and checks that were issued throughout 2017 for unauthorized personal expenses of Defendants Prashant and Mita that were signed by Defendant Prashant and drawn from the operating accounts of Quality Inn Burbank and Quality Inn and Suites Camarillo (all hotels that were managed by or for which Defendants Prashant and Mita had check signing authority or the ability to charge expenses to these hotels' accounts). In addition, Sherman Oaks First Plaza uncovered $32,717.26 in further unauthorized checks drawn from Sherman Oaks First Plaza's operating account on December 14, 2017, improperly made out by Defendants Prashant and Mita for the purchase of a personal Tesla vehicle.

51.    VFLP was able to trace the improper checks and credit card charges, which were used for personal legal expenses, the purchase of a Tesla vehicle and personal credit card charges of Prashant and Mita. The total of improper expenses from each business' account as follows:

| Quality Inn Burbank Airport's Account | Quality Inn and Suites Camarillo's Account | Sherman Oaks First Plaza | <u>Total</u> |
|---|---|---|---|
| $328,134.43 | $39,000 | $32,717.26 | **<u>$399,851.69</u>** |

52.    VFLP also discovered checks were issued to Quality Inn and Suites Camarillo by Corporate Lodging Company that, instead of being deposited into the Quality Inn and Suites Camarillo operating account as they should have been,

and in furtherance of the Conspiracy, were endorsed and deposited by Defendant Prashant into the bank account of Defendant VFMI – an entity unrelated to Quality Inn and Suites Camarillo and not controlled by VFLP, the owner of Quality Inn and Suites Camarillo.  The total amount deposited into the bank account of Defendant VFMI is $42,840.  The amounts and dates of the embezzled checks are as follows:

- April 4, 2017:                    $2,088.00
- April 4, 2017:                    $4,824.00
- April 4, 2017:                    $5,400.00
- August 21, 2017:              $3,528.00
- August 28, 2017:              $2,520.00
- September 4, 2017:           $3,384.00
- September 25, 2017:         $4,896.00
- October 2, 2017:              $1,728.00
- October 9, 2017:              $1,224.00
- October 16, 2017:            $2,736.00
- October 30, 2017:            $3,816.00
- February 12, 2018:          $4,896.00
- February 12, 2018:          $1,800.00

**TOTAL**:                              **$42,840.00**

Thus, the total missing cash receipts and other funds, including the unauthorized issuance of company checks and deposit of third party checks into personal accounts, embezzled by Defendants Prashant, Mita, and Kothari total $808,626.10.

53.    Upon information and belief, the funds were, in furtherance of the Conspiracy, transferred by Defendants across state lines via mail or wire transfer and (with the help of the other members the Consortium) used to purchase, invest

in, and operate businesses and properties in Arkansas and Idaho in order to secret the money and keep it out of reach of Plaintiffs.

54. As managers of Quality Inn Burbank Airport and Quality Inn and Suites Camarillo, Defendants Prashant, Mita, and Kothari were responsible for the preparation of all information to be included in the books and records of Quality Inn Burbank Airport and Quality Inn and Suites Camarillo and management of the cash receipts of such operations. Each time Defendants remitted to Plaintiffs the cash receipts they represented to Plaintiffs that such receipts were the totality of the cash receipts to which Plaintiffs were entitled. However, upon reconciliation, Plaintiffs learned that the cash remitted to them was deficient and that Defendants had misrepresented to Plaintiffs that all cash was remitted to Plaintiffs. When these discrepancies were brought to the attention of Defendants, Defendant Prashant promised Defendants would repay to Plaintiffs an amount equal to the missing cash receipts as soon as possible  No such repayment ever occurred and, when confronted in 2017, Defendant Prashant, for the first time, stated Defendants were entitled to keep the cash proceeds and would not be repaying any amounts to Plaintiffs despite their repeated representations over the years that such repayment would occur.

**C.** **TRANSPORTATION OF STOLEN FUNDS ACROSS STATE LINES TO ACQUIRE BUSINESSES AND PROPERTIES IN FURTHERANCE OF THE CONSPIRACY**

55. Upon information and belief, beginning in and around August of 2015, and continuing thereafter, the Individual Defendants transmitted from California to Arkansas, and possibly to or through other jurisdictions, via wire transfer, mail, or other methods substantial embezzled funds in order to form and fund Century Hospitality and acquire Econo Lodge Inn & Suites, located at 1204 Central Avenue, Hot Springs, Arkansas, with such stolen funds. In addition, upon information and belief, the funds thereby transmitted were deposited in bank

accounts outside of the State of California which operated in multiple states. The transfer and use of these funds were enabled by use of telephones and wire transfers across state lines. Upon information and belief, it was at this time that Defendant Nidhi joined the Consortium with her parents, Prashant and Mita, and Defendant Kothari. Defendant Nidhi is the incorporator of Century Hospitality along with her mother, Defendant Mita.

56.     Further, upon information and belief, in and around November of 2015 and continuing thereafter, the Individual Defendants transmitted from California to Arkansas via wire transfer, mail, or other methods, substantial embezzled funds in order to form and fund Hot Springs Restaurant in Hot Springs, Arkansas with such stolen funds. In addition, upon information and belief, the funds thereby transmitted were deposited in bank accounts outside of the State of California which operated in multiple states. The transfer and use of these funds was enabled by use of telephones and wire transfers across state lines. Defendants Nidhi, Mita, and Smith are managing members/officers of Hot Springs Restaurant. Upon information and belief, it was at this time that Defendant Smith joined the Consortium.

57.     Further, upon information and belief, in or around July of 2017 and continuing thereafter, the Individual Defendants transmitted from California to Idaho via wire transfer, mail, or other methods, substantial embezzled funds in order to form and fund Castle Ranch Steakhouse and acquire the real property located at 3300 S. Vista Avenue, Boise, Idaho 83705, with such stolen funds. In addition, upon information and belief, the funds thereby transmitted were deposited in bank accounts outside of the State of California which operated in multiple states. The transfer and use of these funds were enabled by use of telephones and wire transfers across state lines. Upon information and belief, it was at this time that Defendant Rawal joined the Conspiracy. Defendants Nidhi and Rawal are the incorporators and officers of Castle Ranch Steakhouse.

COMPLAINT

58.     Further, upon information and belief, in or around January of 2018, and continuing thereafter, the Individual Defendants transmitted from California to Idaho via wire transfer, mail, or other methods substantial embezzled funds in order to form and fund VFMI and acquire an ownership interest in Boise Inn and the associated real property located at 4060 W. Fairview Avenue, Boise, Idaho 83706.  In addition, upon information and belief, the funds thereby transmitted were deposited in bank accounts outside of the State of California which operated in multiple states.  The transfer and use of these funds were enabled by use of telephones and wire transfers across state lines.  Defendants Prashant and Mita are officers and, upon information and belief, the incorporators of VFMI.

59.     Further, upon information and belief, in or around May of 2018, and continuing thereafter, the Individual Defendants transmitted from California to Idaho via wire transfer, mail, or other methods, substantial embezzled funds in order to form and fund Pioneer Hotel Group and acquire the Wyndham Garden Boise Airport Hotel and the associated real property located at 3300 S. Vista Avenue, Boise, Idaho, with such stolen funds.  In addition, the funds thereby transmitted were deposited in bank accounts outside of the State of California which operated in multiple states.  The transfer and use of these funds was enabled by use of telephones and wire transfers across state lines.  Upon information and belief, it was at this time that Defendant Doshi joined the Conspiracy.  Defendant Doshi is an incorporator and director of Pioneer Hotel Group, along with Defendant Mita.

60.     Further, upon information and belief, in or around July of 2018, and continuing thereafter, the Individual Defendants transmitted from California to Arkansas via wire transfer, mail, or other methods substantial embezzled funds in order to form and fund Empire Hospitality and acquire Econo Lodge Inn & Suites, and the associated real property located at 1204 Central Avenue, Hot Springs, Arkansas 70901.  In addition, upon information and belief, the funds thereby

COMPLAINT

transmitted were deposited in bank accounts outside of the State of California which operated in multiple states. The transfer and use of these funds were enabled by use of telephones and wire transfers across state lines. Defendant Mita Vaghashia is the incorporator and an officer of Empire Hospitality.

61. At all relevant times, Defendants Prashant, Mita, Kothari, Nidhi, Smith Rawal, and Doshi were officers, authorized representatives, and/or managing directors of Defendants VFMI, Century Hospitality, Hot Springs Restaurant, Empire Hospitality, Castle Ranch Steakhouse, and Pioneer Hotel Group, and the operations and real property owned and controlled by such business entities.

62. Additionally, upon information and belief, between 2015 and 2018, the Individual Defendants, and each of them, coordinated and communicated from California, Idaho, New York, and Arkansas, regarding the funds transfers and funding/acquisition of the aforementioned entities and real properties and to manage the business operations owned by such entities by the use of electronic communications, including telephone calls and email exchanges using interstate channels to accomplish such coordination and communications in furtherance of the Conspiracy.

63. By this action, Plaintiffs seek compensatory, trebled, and punitive damages, restitutionary relief, disgorgement of all ill-gotten gains acquired by the Defendants, and recovery of attorney fees.

## FIRST COUNT

**(For Conducting the Affairs of an Enterprise in Violation of RICO under 18 U.S.C. § 1962(c) by way of Mail and Wire Fraud under 18 U.S.C. §§ 1341 and 1343 brought by Plaintiffs against All Defendants)**

64. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

COMPLAINT

65.     Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

66.     Each of the Individual Defendants and Entity Defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

67.     The Consortium is a group of persons associated in fact for the common purposes of fraudulently stealing from Plaintiffs and transporting stolen money and/or property across state lines.

68.     As a result, the Consortium constitutes an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (the "Enterprise").  During all relevant times, the Enterprise was engaged in and its activities affected interstate commerce as described herein.

69.     The Consortium conducted and/or participated in the conduct of the Enterprise, as described herein, through a pattern of racketeering activity, as that phrase is defined in 18 U.S.C. §§ 1961(1), (5).

70.     The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.  Specifically, the Consortium engaged in an intentional Enterprise to defraud Plaintiffs to obtain money from them through false or fraudulent pretenses, representations, and promises.  It was reasonably foreseeable to each member of the Consortium that the mail and/or wires would be used in furtherance of the Enterprise, and the mail and/or wires were in fact used to further execute the Enterprise to defraud.

71.     For the purposes of furthering and executing the Enterprise to defraud, the Consortium regularly transmitted or caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds (the "Wirings"), and also regularly caused matters and things to be placed in a post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier (the "Mailings").

72.    The Consortium used the wires and/or mails on a daily basis for the above stated purposes to further and execute the Enterprise to defraud Plaintiffs. For example, every time that the Consortium transported funds to form businesses and/or acquire real properties outside of California via mail or wire or other electronic means, or provided paperwork for such formation and acquisition via the mail, the Consortium furthered the Enterprise.

73.    The Wirings addressed above each constitute predicate acts of wire fraud in furtherance of the Enterprise in violation of 18 U.S.C. § 1343 (wire fraud) because they were done, in whole or in part, via the use of writings, signs, signals, pictures, and sounds transmitted by means of wire communications in interstate commerce, including wire funds transfers, email, and telephone communications.

74.    The foregoing activities, that occurred on a regular basis for over four (4) years, each constitute predicate acts in furtherance of the Enterprise in violation of 18 U.S.C. § 1341 (mail fraud) because they were done, in whole or in part, via the use of private or commercial interstate carriers or the Postal Service. The Consortium's conduct poses a threat of continued criminal activity and/or has extended over a substantial period of time.

75.    The Consortium, and each of them, were common participants in the predicate acts and Plaintiffs were their victims.

76.    The Enterprise to defraud Plaintiffs and to siphon away money extended over at least four (4) years, and perhaps longer.  The predicate acts were the Consortium's manner of conducting the Enterprise and continuing racketeering.

77.    The Enterprise to defraud Plaintiffs detailed above deprived Plaintiffs of at least $808,626.10.  As a direct and proximate result of the Consortium's violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

/ / /

COMPLAINT

78.     The Entity Defendants, and each of them, participated directly in the conduct of the Enterprise's affairs through a pattern of racketeering activity, by knowingly receiving and utilizing the funds derived from the Individual Defendants' racketeering activity, in violation of 18 U.S.C. § 1962(c).  The pattern of racketeering activity included all of the predicate acts alleged in this Complaint, which are incorporated herein by reference.

79.     As a result of their misconduct, the Consortium, and each of them, are liable to Plaintiffs for their losses, in an amount to be determined at trial.

80.     In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the Consortium, and each of them.

## SECOND COUNT

**(For Conspiracy to Violate RICO under 18 U.S.C. § 1962(d) by way of Mail and Wire Fraud under 18 U.S.C. §§ 1341 and 1343 brought by Plaintiffs against All Defendants)**

81.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

82.     Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

83.     Each of the Individual Defendants and Entity Defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

84.     Each of the Individual Defendants and Entity Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  The agreement was in violation of 18 U.S.C. § 1962(d).

85.     Each of the Individual Defendants also conspired to violate 18 U.S.C. §1962(a) by agreeing to use, to be affiliated with, or to further, directly or indirectly, through a pattern of racketeering activity, in the acquisition, use, or

management of funds in, or the establishment and operation of, the Entity Defendants, and each of them.  This agreement was in violation of 18 U.S.C. § 1962(d).

86.    The Individual Defendants and Entity Defendants committed and caused to be committed a series of overt predicate acts of racketeering in furtherance of the Conspiracy, including but not limited to the acts described in this Complaint.  The pattern of racketeering activity included all of the predicate acts alleged in this Complaint, which are incorporated herein by reference.

87.    As a direct and proximate result of the overt predicate acts of racketeering and of the Individual Defendants and Entity Defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

88.    As a result of the Conspiracy in violation of 18 U.S.C. §§ 1962(d), the Individual Defendants and Entity Defendants are liable to Plaintiffs for their losses, in an amount to be determined at trial.

89.    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the Individual Defendants and Entity Defendants.

## **THIRD COUNT**

**(For Conducting the Affairs of an Enterprise in Violation of RICO under 18 U.S.C. § 1962(c) by way of Interstate Transportation of Stolen Property under 18 U.S.C. §§ 2314 and 2315 brought by Plaintiffs against All Defendants)**

90.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

91.    Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

92.    Each of the Individual Defendants and Entity Defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

93.    The Consortium was a group of persons associated in fact for the common purpose of fraudulently inducing and stealing money from Plaintiffs and transporting such stolen money across state lines.

94.    As a result, the Consortium constitutes an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (the "Enterprise").  During all relevant times, the Enterprise was engaged in and its activities affected interstate commerce.

95.    The Consortium stole and transported across state lines, at least the following amounts:

      a.    $365,934.41 in cash;

      b.    $42,840 in third party checks unlawfully deposited to VFMI; and

      c.    at least $399,851.69 in unauthorized charges and withdrawals for personal expenses ($328,134.43 from QIBA; $39,000 from QISC; and $32,717.26 from SOFP).

96.    The foregoing activities also consisted of transportation of stolen property in violation of 18 U.S.C. §§ 2314 and 2315.  Specifically, the Consortium engaged in an intentional pattern of racketeering activity to defraud Plaintiffs, to obtain money or property from them through false or fraudulent pretenses, and to transport such money and property across state lines from California to Idaho and Arkansas.  Each such transfer of stolen money or property across state lines constitutes a predicate act of transportation of stolen money or property because each such transfer furthered and executed the Conspiracy to defraud Plaintiffs.  Such transfers across state lines were not isolated incidents but related acts aimed at the common purpose and goal of secreting and making the stolen money unreachable to Plaintiffs.  The Consortium's conduct poses a threat of continued criminal activity and/or has extended over a substantial period of time.

/ / /

COMPLAINT

97.    The Consortium, and each of them, participated in and completed acts in furtherance of the Conspiracy by knowingly receiving stolen funds transported across state lines and by managing and controlling the businesses and real properties acquired with such stolen funds and owned and operated by the Consortium or its individual members.  The pattern of racketeering activity included all of the predicate acts alleged in this Complaint, which are incorporated herein by reference.

98.    As a direct and proximate result of the overt predicate acts of racketeering of the Consortium in violation of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

99.    As a result of the Conspiracy in violation of 18 U.S.C. § 1962(d), the Consortium, and each of them, is liable to Plaintiffs for their losses, in an amount to be determined at trial.

100.   In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the Individual Defendants and Entity Defendants.

## **FOURTH COUNT**

**(For Conspiracy to Violate RICO under 18 U.S.C. § 1962(d) by way of Interstate Transportation of Stolen Property under 18 U.S.C. §§ 2314 and 2315 by brought Plaintiffs against All Defendants)**

101.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

102.   Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

103.   Each of the members of the Consortium is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

/ / /

COMPLAINT

104.    Each of the members of the Consortium conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  The agreement was in violation of 18 U.S.C. § 1962(d).

105.    Each of the members of the Consortium also conspired to violate 18 U.S.C. §1962(a) by agreeing to use, to be affiliated with, or to further, directly or indirectly, through a pattern of racketeering activity, in the acquisition, use, or management of funds in, or the establishment and operation of, the Entity Defendants, and each of them.  This agreement was in violation of 18 U.S.C. § 1962(d).

106.    The members of the Consortium committed and caused to be committed a series of overt predicate acts of racketeering in furtherance of the Conspiracy, including but not limited to the acts described in this Complaint, which  are incorporated herein by reference.

107.    As a direct and proximate results of the overt predicate acts of racketeering and of the Consortium's violation of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

108.    As a result of the Conspiracy in violation of 18 U.S.C. § 1962(d), the Individual Defendants and Entity Defendants are liable to Plaintiffs for their losses, in an amount to be determined at trial.

109.    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the Individual Defendants and Entity Defendants.

/ / /

/ / /

/ / /

/ / /

COMPLAINT

## FIFTH COUNT

**(For Conducting the Affairs of an Enterprise in Violation of RICO under 18 U.S.C. § 1962(c) by way of Laundering of Monetary Instruments under 18 U.S.C. § 1956 brought by Plaintiffs against All Defendants)**

110.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

111.   Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

112.   Each of the Individual Defendants and Entity Defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

113.   The Consortium were a group of persons associated in fact for the common purpose of fraudulently inducing and stealing money from Plaintiffs and laundering such money instruments.

114.   As a result, the Consortium constitutes an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (the "Enterprise").  During all relevant times, the Enterprise was engaged in and its activities affected interstate commerce.

115.   The Consortium stole and, upon information and belief, laundered, at least the following monetary instruments:

      a.  $365,934.41 in cash;

      b.  $42,840 in third party checks unlawfully deposited to VFMI; and

      c.  at least $399,851.69 in unauthorized charges and withdrawals for personal expenses ($328,134.43 from QIBA; $39,000 from QISC; and $32,717.26 from SOFP).

116.   The afore-mentioned checks and cash constitute monetary instruments within the meaning of 18 U.S.C. § 1956(c)(5).

117.   The foregoing activities also constituted laundering of monetary instruments in violation of 18 U.S.C. §§ 1957(a)(1)(B)(i).  Specifically, the

Consortium, knowing that the afore-mentioned monetary instruments were derived from unlawful activity as described above, conducted the financial transactions described above regarding acquisition of certain businesses and properties, which transactions were completed using the proceeds of activities in violation of 18 U.S.C. §§ 1341, 1343, 2314, and 2315, which constitute specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(A).

118.   The Consortium engaged in such financial transactions knowing that such transactions were designed, in whole or in part, to conceal or disguise the nature, source, ownership, and control of the proceeds of the afore-mentioned unlawful activity.  Specifically, Defendants Prashant, Mita, and Kothari, enrolled the remaining Individual Defendants and Entity Defendants to participate in the afore-mentioned financial transactions in order to conceal the source of the monetary instruments used to engaged in such financial transactions by transferring the monetary instruments to the remaining Individual Defendants and Entity Defendants, who in turn purchased the properties and businesses with such monetary instruments in their own name, thereby concealing Defendants Prashant, Mita, and Kothari's embezzlement activities as the source of the monetary instruments and Defendants Prashant, Mita, and Kothari's control of such monetary instruments.  Each such financial transaction using monetary instruments transferred across state lines constitutes a predicate act of laundering of monetary instruments because each such transfer furthered and executed the Conspiracy to defraud Plaintiffs by concealing the source and control of such monetary instruments.  Such financial transactions across state lines were not isolated incidents but related acts aimed at the common purpose and goal of secreting and making the stolen money unreachable to Plaintiffs.  The Consortium's conduct poses a threat of continued criminal activity and/or has extended over a substantial period of time.

///

COMPLAINT

119.    The Consortium, and each of them, participated in and completed acts in furtherance of the Conspiracy by knowingly engaging in the laundering of monetary instruments by acquiring the businesses and real properties discussed herein.  The pattern of racketeering activity included all of the predicate acts alleged in this Complaint, which are incorporated herein by reference.

120.    As a direct and proximate result of the overt predicate acts of racketeering of the Consortium in violation of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

121.    As a result of the Conspiracy in violation of 18 U.S.C. § 1962(d), the Consortium, and each of them, is liable to Plaintiffs for their losses, in an amount to be determined at trial.

122.    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the Individual Defendants and Entity Defendants.

## SIXTH COUNT

**(For Conspiracy to Violate RICO under 18 U.S.C. § 1962(d) by way of Laundering of Monetary Instruments under 18 U.S.C. § 1956 brought by Plaintiffs against All Defendants)**

123.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

124.    Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

125.    Each of the members of the Consortium is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

126.    Each of the members of the Consortium conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate, directly or indirectly, in

the conduct of the affairs of the Enterprise through a pattern of racketeering
activity.  The agreement was in violation of 18 U.S.C. § 1962(d).

127.    Each of the members of the Consortium also conspired to violate 18
U.S.C. §1962(a) by agreeing to use, to be affiliated with, or to further, directly or
indirectly, through a pattern of racketeering activity, in the acquisition, use, or
concealment of monetary instruments derived from unlawful activity as described
above, or the establishment and operation of, the Entity Defendants, and each of
them.  This agreement was in violation of 18 U.S.C. § 1962(d).

128.    The members of the Consortium committed and caused to be
committed a series of overt predicate acts of racketeering in furtherance of the
Conspiracy, including but not limited to the acts described in this Complaint.  The
pattern of racketeering activity included all of the predicate acts alleged in this
Complaint, which are incorporated herein by reference.

129.    As a direct and proximate result of the overt predicate acts of
racketeering and of the Consortium's violation of 18 U.S.C. § 1962(d), Plaintiffs
have been injured in their business or property within the meaning of 18 U.S.C. §
1964(c).

130.    As a result of the Conspiracy in violation of 18 U.S.C. § 1962(d), the
Individual Defendants and Entity Defendants are liable to Plaintiffs for their
losses, in an amount to be determined at trial.

131.    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to
recover threefold their damages plus costs and attorney fees from the Individual
Defendants and Entity Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

## SEVENTH COUNT

**(For Conducting the Affairs of an Enterprise in Violation of RICO under 18 U.S.C. § 1962(c) by way of Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity under 18 U.S.C. § 1957 brought by Plaintiffs against All Defendants)**

132.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

133.   Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

134.   Each of the Individual Defendants and Entity Defendants is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

135.   The Consortium was a group of persons associated in fact for the common purpose of fraudulently inducing and stealing money from Plaintiffs and engaging in financial transactions using the property derived from specified unlawful activity, including the transportation of stolen property across state lines, the laundering of monetary instruments, mail fraud, and wire fraud.

136.   As a result, the Consortium constitutes an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (the "Enterprise").  During all relevant times, the Enterprise was engaged in and its activities affected interstate commerce.

137.   The Consortium stole and transported across interstate lines via monetary transactions, at least the following amounts:

    a.   $365,934.41 in cash;

    b.   $42,840 in third party checks unlawfully deposited to VFMI; and

    c.   at least $399,851.69 in unauthorized charges and withdrawals for personal expenses ($328,134.43 from QIBA; $39,000 from QISC; and $32,717.26 from SOFP).

COMPLAINT

138.   Such amounts, which were in excess of $10,000, were used to acquire business and properties across state lines as described herein in violation of 18 U.S.C. § 1957.  Specifically, the Consortium knowingly engaged in monetary transactions using the proceeds of the afore-mentioned unlawful activity, including the acquisition of real properties and businesses in Idaho and Arkansas.  Each such acquisition of businesses or real properties using the proceeds of unlawful activities occurring in California and transferred across state lines constitutes a predicate act of engaging in monetary transactions in property derived from specified unlawful activity because each such transfer furthered and executed the Conspiracy to defraud Plaintiffs.  Such acquisitions were not isolated incidents but related acts aimed at the common purpose and goal of secreting and making the stolen money unreachable to Plaintiffs.  The Consortium's conduct poses a threat of continued criminal activity and/or has extended over a substantial period of time.

139.   The Consortium, and each of them, participated in and completed acts in furtherance of the Conspiracy by knowingly receiving stolen funds transported across interstate lines and by acquiring and managing the businesses and real properties acquired with such stolen funds and owned and operated by the Consortium.  The pattern of racketeering activity included all of the predicate acts alleged in this Complaint, which are incorporated herein by reference.

140.   As a direct and proximate result of the overt predicate acts of racketeering of the Consortium in violation of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

141.   As a result of the Conspiracy in violation of 18 U.S.C. § 1962(d), the Consortium, and each of them, is liable to Plaintiffs for their losses, in an amount to be determined at trial.

COMPLAINT

142.    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the Individual Defendants and Entity Defendants.

## EIGHTH COUNT

**(For Conspiracy to Violate RICO under 18 U.S.C. § 1962(d) by way of Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity under 18 U.S.C. § 1957 brought by Plaintiffs against All Defendants)**

143.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

144.    Each of the Plaintiffs is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

145.    Each of the members of the Consortium is a "person" under 18 U.S.C. §§ 1961(3) and 1962(a)-(d).

146.    Each of the members of the Consortium conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  The agreement was in violation of 18 U.S.C. § 1962(d).

147.    Each of the members of the Consortium also conspired to violate 18 U.S.C. §1962(a) by agreeing to use, to be affiliated with, or to further, directly or indirectly, through a pattern of racketeering activity, in the acquisition, use, or management of monetary instruments to acquire real properties and businesses across state lines.  This agreement was in violation of 18 U.S.C. § 1962(d).

148.    The members of the Consortium committed and caused to be committed a series of overt predicate acts of racketeering in furtherance of the Conspiracy, including but not limited to the acts described in this Complaint, which are incorporated herein by reference.

COMPLAINT

149.    As a direct and proximate results of the overt predicate acts of racketeering and of the Consortium's violation of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

150.    As a result of the Conspiracy in violation of 18 U.S.C. § 1962(d), the Individual Defendants and Entity Defendants are liable to Plaintiffs for their losses, in an amount to be determined at trial.

151.    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorney fees from the Individual Defendants and Entity Defendants.

## <u>NINTH COUNT</u>

**(For Fraudulent Misrepresentation brought by Plaintiffs against Defendants Prashant, Mita, and Kothari)**

152.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

153.    As described in detail above, Defendants Prashant, Mita, and Kothari intentionally made numerous false representations to Plaintiffs, including but not limited to, misrepresenting to Plaintiff VFLP that Defendants Prashant, Mita and Kothari had or would remit all cash receipts collected by Defendants Prashant, Mita, and Kothari on behalf of Plaintiff VFLP and its hotel operations to VFLP.

154.    Additionally, Defendants Prashant and Mita made false representations to Plaintiff VFLP and Plaintiff Sherman Oaks First Plaza regarding the nature of certain expenses incurred by Defendants Prashant and Mita (and upon information and belief, Kothari) on behalf of Plaintiffs that, rather than being *bona fide* business expenses for Plaintiffs, were in fact personal expenses of Defendants Prashant and Mita (and upon information and belief, Kothari).  The checks and the nature of the expenses paid as personal expenses of Defendants Prashant and Mita are detailed above in Paragraphs 50-51.

155.   Defendants Prashant, Mita, and Kothari knew that these representations were false and were made for the purpose of misleading Plaintiffs regarding the amount, treatment, and remission of cash receipts and other expenses of Plaintiffs' business operations in order to conceal from Plaintiffs Defendants Prashant, Mita, and Kothari's theft of cash receipts and improper payment of personal expenses.

156.   As a direct result of Defendants Prashant, Mita, and Kothari's intentional misrepresentations, Plaintiffs have suffered general, special, consequential, incidental, and compensatory damages.  For example, without limitation, but for these misrepresentations, Plaintiffs would have discovered Defendants Prashant, Mita, and Kothari's intent to steal and never pay back the cash receipts and put a stop to it sooner, thereby suffering less damages.  As a result, Defendants Prashant, Mita, and Kothari are liable to Plaintiffs for their losses in an amount to be determined at trial.

157.   In doing the acts herein alleged, Defendants Prashant, Mita, and Kothari, and each of them, acted fraudulently, willfully, maliciously, and with callous disregard of Plaintiffs' rights and interest in Plaintiffs' property, subjecting Defendants Prashant, Mita, and Kothari to punitive damages, according to proof at trial.

## **TENTH COUNT**

### **(For Concealment by Plaintiff VFLP against Defendants Prashant, Mita, and Kothari)**

158.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

159.   As alleged herein, Plaintiff VFLP retained Defendants Prashant and Mita, who in turn, without written consent or verbal permission from VFLP to delegate this very important and critical role, retained Kothari on behalf of Plaintiff VFLP, to provide competent and truthful management services to

Plaintiffs and Defendants Prashant, Mita, and Kothari.  As a result of this retention and delegation, Defendants Prashant, Mita, and Kothari had a duty to disclose all material facts regarding their services, including without limitation a duty to accurately report the financial transactions and affairs of the hotels.  Defendants Prashant, Mita, and Kothari intentionally concealed certain material facts to Plaintiffs, including but not limited to, accurate and truthful information regarding the amount and nature of expenses of Plaintiffs' business operations, and the treatment and remission to Plaintiff VFLP of cash receipts of Plaintiff VFLP's business operations while under Defendants Prashant, Mita, and Kothari's management of such operations.  Defendant Prashant, Mita, and Kothari's failure to disclose these facts was deceptive and designed to intentionally defraud Plaintiffs of money and property.

160.   Had Defendants Prashant, Mita, and Kothari (who was retained by Prashant and Mita without VFLP's authorization) truthfully and accurately disclosed the information alleged above, Plaintiff VFLP would have not retained and continued to retain their purported management services, and Plaintiff VFLP would have discovered Defendants Prashant, Mita, and Kothari's intent to steal and never pay back the cash receipts and put a stop to it sooner, thereby suffering less damages.

161.   As a result of Defendants' fraudulent concealment, Plaintiff VFLP has lost at least $808,626.10 in revenues, and perhaps more, to Defendants Prashant, Mita, and Kothari, and further special, consequential, incidental, and compensatory damages.  As a result, Defendants Prashant, Mita, and Kothari are liable to Plaintiff VFLP for their losses in an amount to be determined at trial.

162.   In doing the acts herein alleged, Defendants Prashant, Mita, and Kothari, and each of them, acted fraudulently, willfully, maliciously, and with callous disregard of Plaintiffs' rights and interest in Plaintiffs' property, subjecting Defendants Prashant, Mita, and Kothari to punitive damages, according to proof at

37

trial.

## ELEVENTH COUNT

### (For Breach of Contract brought by Plaintiffs against Defendants Prashant and Mita)

163.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

164.   As set forth above, Defendants Prashant and Mita engaged in binding implied-in-fact contracts with Plaintiffs, for the management of certain of Plaintiff VFLP's hotel operations, in exchange for payment from Plaintiff, and, from time to time, handling payments and signing checks for certain expenses of Plaintiff Sherman Oaks First Plaza.

165.   Plaintiffs performed all obligations required of them under the contracts, and made payments to Defendants Prashant and Mita for the managerial and related services, as provided for in the implied-in-fact agreements.

166.   Defendants Prashant and Mita breached the agreements with Plaintiffs by failing to provide the contracted for managerial services in an appropriate manner, including failing to remit all revenues generated by Plaintiff VFLP's hotel operations managed by Defendants Prashant and Mita to Plaintiff, and by utilizing the operating funds of Plaintiffs VFLP and Sherman Oaks First Plaza's businesses for Defendants Prashant and Mita's personal expenses.

167.   As a direct and proximate result of Defendants Prashant and Mita's breaches, Plaintiffs have been damaged in an amount to be determined at trial, and further special, consequential, incidental, and compensatory damages. As a result, Defendants Prashant and Mita are liable to Plaintiffs for their losses in an amount to be determined at trial.

## TWELFTH COUNT

### (False Promise by Plaintiffs against Defendants Prashant, Mita, and Kothari)

168.   Plaintiffs reallege and incorporate by reference the allegations

38

COMPLAINT

contained in the preceding paragraphs as if fully set forth herein.

169.    As alleged above, Defendants Prashant, Mita, and Kothari made certain promises to Plaintiffs, including but not limited to, the promise to provide truthful and competent managerial services to Plaintiffs and to remit to Plaintiffs all funds received by Defendants Prashant, Mita, and Kothari on behalf of Plaintiff VFLP's businesses and to appropriately use operating funds of Plaintiff VFLP and Sherman Oaks First Plaza's businesses for business purposes and not for Defendants' personal expenses.  Defendants Prashant, Mita, and Kothari did not intend to perform these promises when Defendants Prashant, Mita, and Kothari made them, and Plaintiffs reasonably relied on Defendants Prashant, Mita, and Kothari's promises.

170.    Defendants did not perform the promised acts and Plaintiffs suffered harm.  As a result of Defendants Prashant, Mita, and Kothari's false promises, Plaintiffs have lost at least $808,626.10 in stolen money and further incurred special, consequential, incidental, and compensatory damages.  As a result, Defendants Prashant, Mita, and Kothari are liable to Plaintiffs for their losses in an amount to be determined at trial.

171.    In doing the acts herein alleged, Defendants, and each of them, acted fraudulently, willfully, maliciously, and with callous disregard of Plaintiffs' rights and interest in Plaintiffs' property, subjecting  Defendants Prashant, Mita, and Kothari to punitive damages, according to proof at trial.

## THIRTEENTH COUNT

### (Common Count brought by Plaintiffs against All Defendants)

172.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

173.    As set forth above, Defendants engaged in a course of conduct as a part of a plan, scheme, and design to cheat, defraud and steal money from

39

COMPLAINT

Plaintiffs. Defendants, and each of them, received money that was intended to be for the benefit of Plaintiffs.

174.    Had Plaintiffs known the true facts and intent of Defendants, Plaintiffs would not have retained and continued to retain Defendants Prashant, Mita, and Kothari's services as managers of Plaintiff's hotel operations or granted Defendant Prashant check signing authority for Plaintiffs' operating accounts.

175.    As a result of Defendants' fraudulent and unlawful acts, Plaintiffs have lost at least $808,626.10, and perhaps more, that Defendants wrongfully obtained.  Defendants, and each of them, have obtained possession of Plaintiffs' money that is rightfully owed to Plaintiffs, that they ought, in equity and good conscience, pay over to Plaintiffs.  As a result, Defendants are liable to Plaintiffs for their losses in an amount to be determined at trial, including special, consequential, incidental, and compensatory damages.

## FOURTEENTH COUNT

### (Conversion brought by Plaintiffs against All Defendants)

176.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth therein.

177.    As set forth above, Defendants engaged in a course of conduct as a part of a plan, scheme, and design to cheat, defraud and steal money from Plaintiffs. Defendants, and each of them, received money that was intended to be for the benefit of Plaintiffs.

178.    Defendants' actions, as alleged herein, constitute conversion against Plaintiffs. In particular, Plaintiffs are informed and believe and thereon allege that Defendants have converted for their own use and benefit monies in the form of cash, checks and credit charges from, to, or against hotel operations belonging to Plaintiffs, and have failed and refused and continue to fail and refuse to pay and account for these funds.

COMPLAINT

179.    As a direct and proximate result of Defendants' acts of conversion, Plaintiffs have sustained damages in an amount to be determined at the time of trial. Plaintiffs also request an accounting to allow them to ascertain the full amount of their damage.

180.    In doing the acts herein alleged, Defendants, and each of them, acted fraudulently, willfully, maliciously, and with callous disregard of Plaintiffs' rights and interest in Plaintiffs' property, subjecting  Defendants Prashant, Mita, and Kothari to punitive damages, according to proof at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Vaghashia Family Limited Partnership and Sherman Oaks First Plaza pray for judgment as follows:

1.    **ON THE FIRST COUNT FOR RICO (MAIL AND WIRE FRAUD) 18 U.S.C. § 1341, 1343**

    a.    For compensatory damages in an amount to be proven at trial;

    b.    For special damages according to proof;

    c.    For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

    d.    For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

    e.    For punitive damages; and

    f.    Such other relief as the Court deems just.

2.    **ON THE SECOND COUNT FOR CONSPIRACY TO COMMIT RICO (MAIL AND WIRE FRAUD)**

    a.    For compensatory damages in an amount to be proven at trial;

    b.    For special damages according to proof;

41

COMPLAINT

c.   For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

d.   For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

e.   For punitive damages; and

f.   Such other relief as the Court deems just.

**3.   ON THE THIRD COUNT FOR RICO (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY) 18 U.S.C. §2314, 2315**

a.   For compensatory damages in an amount to be proven at trial;

b.   For special damages according to proof;

c.   For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

d.   For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

e.   For punitive damages; and

f.   Such other relief as the Court deems just.

**4.   ON THE FOURTH COUNT FOR CONSPIRACY TO COMMIT RICO (INTERSTATE TRANSPORTATION OF STOLEN PROPERTY)**

a.   For compensatory damages in an amount to be proven at trial;

b.   For special damages according to proof;

COMPLAINT

c.      For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

d.      For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

e.      For punitive damages; and

f.      Such other relief as the Court deems just.

5.      **ON THE FIFTH COUNT FOR RICO (LAUNDERING OF MONETARY INSTRUMENTS) 18 U.S.C. § 1956**

a.      For compensatory damages in an amount to be proven at trial;

b.      For special damages according to proof;

c.      For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

d.      For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

e.      For punitive damages; and

f.      Such other relief as the Court deems just.

6.      **ON THE SIXTH COUNT FOR CONSPIRACY TO COMMIT RICO (LAUNDERING OF MONETARY INSTRUMENTS)**

a.      For compensatory damages in an amount to be proven at trial;

b.      For special damages according to proof;

c.      For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit,

43

and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

d.    For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

e.    For punitive damages; and

f.    Such other relief as the Court deems just.

**7.    ON THE SEVENTH COUNT FOR RICO (ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY) 18 U.S.C. § 1957**

a.    For compensatory damages in an amount to be proven at trial;

b.    For special damages according to proof;

c.    For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

d.    For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

e.    For punitive damages; and

f.    Such other relief as the Court deems just.

**8.    ON THE EIGHTH COUNT FOR CONSPIRACY TO COMMIT RICO (ENGAGING IN MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY)**

a.    For compensatory damages in an amount to be proven at trial;

b.    For special damages according to proof;

44

COMPLAINT

c.   For treble the damages sustained by Plaintiffs, including but not limited to, the costs of investigation, the costs of this suit, and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964 (c), together with pre- and post-judgment interest, against all Defendants in violation of 18 U.S.C. § 1962;

d.   For equitable relief, as may be appropriate, in accordance with 18 U.S.C. § 1964 (a);

e.   For punitive damages; and

f.   Such other relief as the Court deems just.

**9.   ON THE NINTH COUNT FOR FRAUDULENT MISREPRESENTATION**

a.   For damages according to proof in an amount to be determined at trial;

b.   For punitive damages;

c.   For costs; and

d.   Such other relief as the Court deems just.

**10.   ON THE TENTH COUNT FOR CONCEALMENT**

a.   For damages according to proof in an amount to be determined at trial;

b.   For punitive damages;

c.   For costs; and

d.   Such other relief as the Court deems just.

**11.   ON THE ELEVENTH COUNT FOR BREACH OF CONTRACT**

a.   For damages according to proof in an amount to be determined at trial;

b.   For costs;

c.   For pre- and post-judgment interest; and

COMPLAINT

d.   Such other relief as the Court deems just.

12.   **ON THE TWELFTH COUNT FOR FALSE PROMISE**

a.   For damages according to proof in an amount to be determined at trial;

b.   For punitive damages;

c.   For costs;

d.   For pre- and post-judgment interest; and

e.   Such other relief as the Court deems just.

13.   **ON THE THIRTEENTH COUNT FOR COMMON COUNT**

a.   For damages according to proof in an amount to be determined at trial;

b.   For costs;

c.   For pre- and post-judgment interest; and

d.   Such other relief as the Court deems just.

14.   **ON THE FOURTEENTH COUNT FOR CONVERSION**

a.   For damages according to proof in an amount to be determined at trial;

b.   For costs;

c.   For pre- and post-judgment interest; and

d.   Such other relief as the Court deems just.

DATED: March 14, 2019          **ENENSTEIN PHAM & GLASS, APC**

By: _____

Darren S. Enenstein
Robert A. Rabbat
Chris S. Pacetti
Attorneys for Plaintiffs Vaghashia
Family Limited Partnership and
Sherman Oaks First Plaza

46

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all claims and causes of action for which a right to trial by jury exists.

DATED: March 14, 2019                     **ENENSTEIN PHAM & GLASS, APC**

By: _____
　　　　Darren S. Enenstein
　　　　Robert A. Rabbat
　　　　Chris S. Pacetti
　　　　Attorneys for Plaintiffs Vaghashia
　　　　Family Limited Partnership and
　　　　Sherman Oaks First Plaza

COMPLAINT